UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 25-00334-01 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CAMERON D. BOATWIN | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss Indictment (Record Document 17) filed by Defendant Cameron D. Boatwin ("Boatwin") on December 18, 2025. Boatwin moves to dismiss the Indictment charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The Government filed an Opposition (Record Document 21) and Boatwin replied (Record Document 23). For the reasons explained below, the Motion is **DENIED**.

**FACTUAL BACKGROUND**

On September 29, 2025, officers with the Shreveport Police Department conducted a traffic stop of a vehicle Boatwin was driving. See Record Document 21 at 1–2. During the stop, Boatwin fled on foot, and officers located a 9mm pistol inside the vehicle, of which Boatwin was the sole occupant. See id. On December 3, 2025, Boatwin was indicted for possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

Prior to the charged conduct, Boatwin had sustained multiple felony convictions punishable by imprisonment for a term exceeding one year. See Record Document 21 at 2. In April 2022, Boatwin pled guilty to attempted illegal carrying of weapons while in possession of a controlled dangerous substance and was sentenced to three years of

imprisonment. See id. In May 2023, Boatwin pled guilty to assault by drive-by shooting and was sentenced to three years of imprisonment. See id. In October 2025, Boatwin pled guilty to attempted possession of a firearm by a convicted felon and was sentenced to five years' imprisonment, suspended, with three years of supervised probation. See id.

Boatwin now moves to dismiss the indictment, arguing that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him. See Record Document 17 at 1. Relying on New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022), and United States v. Diaz, 116 F.4th 458 (5th Cir. 2024), Boatwin contends that because the Second Amendment presumptively protects his conduct and that the burden shifts to the Government to demonstrate that disarming him is consistent with the Nation's historical tradition of firearm regulation. See Record Document 17-1 at 3–4. Boatwin asserts that the Government has failed to carry that burden as applied to him and that the indictment must be dismissed. See id.

In opposition, the government first contends that Boatwin's probation condition that prohibited possession of a firearm provides a separate basis to restrict Boatwin's Second Amendment rights. See Record Document 21 at 3. In the alternative, the government contends that the nature of the Boatwin's prior convictions, particularly the assault by drive-by shooting, defeats his as-applied challenge under applicable law. See id. at 5.

## LAW AND ANALYSIS

I.  **Applicable Standards**

Federal Rule of Criminal Procedure 12(b)(1) states that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the permits." "Among other defenses, objections or requests available under

Federal Rule of Criminal Procedure 12(b), a party may move to dismiss an indictment based on 'a defect in the indictment,' including 'failure to state an offense.'" United States v. Wilson, 2024 WL 4436637, at *2 (E.D. La. Oct. 6, 2024) (citing Fed. R. Crim. P. 12(b)(3)(B)(v)). A court can resolve a motion to dismiss an indictment before trial when the motion presents a question of law. See United States v. Fontenot, 665 F.3d 640, 644 (5th Cir. 2011).

In Bruen, the Supreme Court provided a two-step framework for Second Amendment constitutional challenges. See 597 U.S. at 24. First, "Bruen requires the Court to decide 'if the Second Amendment's plain text covers' the conduct at issue." Wilson, 2024 WL 4436637, at *4 (citing Bruen, 597 U.S. at 24). Second, "the burden [...] shifts to the government to demonstrate that regulating [Defendant's] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.'" Id. (citing Bruen, 597 U.S. at 24). "To satisfy this burden, the government must 'identify a well-established and representative historical analogue, not a historical twin.'" Diaz, 116 F.4th at 467 (citing Bruen, 597 U.S. at 30). To determine whether regulations are relevantly similar under the Second Amendment, the Court must consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense." Bruen, 597 U.S. at 29.

II.     **Analysis**

In considering the first step of the Bruen analysis, the Court must consider whether the Second Amendment's plain text covers the instant conduct. See 597 U.S. at 24. The Fifth Circuit in Diaz made clear that the Second Amendment's plain text covers felons as

among "the people" covered by the Second Amendment. See 116 F.4th at 169. Thus, the Court will proceed to the second step under Bruen.

In analyzing the second prong, the Court first must determine whether there are historical analogues that "impose a comparable burden on the right of armed self-defense" during the timeframe of the Second Amendment's ratification. Bruen, 597 U.S. at 27. In upholding a § 922(g)(1) conviction predicated on a felony theft conviction, the Diaz Court relied on three categories of historical analogues:

> (i) historical laws that authorized capital punishment and estate forfeiture as consequences of felonies, (ii) two proposals from state constitutional conventions that excluded those deemed dangerous from the right to bear arms, and (iii) the colonial-era "going armed" laws first discussed in Rahimi that "prohibited going armed offensively and authorized forfeiture of weapons as punishment."

U.S. v. Ezell, 2024 WL 4729314, at *2 (W.D. La. Nov. 8, 2024) (citing Diaz, 116 F.4th at 467–68, 470) (discussing U.S. v. Rahimi, 602 U.S. 680 (2024)) (internal citations omitted). In all three categories discussed in Diaz, the consequences of committing certain crimes encompassed forfeiture of the right to bear arms.

The historical analogues discussed above are rooted in the common purpose of disarming individuals viewed as violent or as a threat to public safety. These analogues represent the longstanding tradition of firearm regulation that allows the "Government to disarm individuals who present a credible threat to the physical safety of others." Rahimi, 602 U.S. at 700.

Here, at least one of Boatwin's predicate felony convictions establishes the required nexus to violence and public safety. Boatwin's conviction for assault by drive-by shooting places him squarely into the category of individuals who present a threat to public safety. Like in Diaz, the enforcement of § 922(g)(1) against Boatwin is "relevantly

similar to that of the [historical analogues]: to deter violence and lawlessness." 116 F.4th at 469. The Court's conclusion is further supported by Fifth Circuit precedent. In <u>United States v. Morgan</u>, the Fifth Circuit held that § 922(g)(1) was constitutionally applied to a defendant whose sole predicate conviction involved a drive-by shooting. <u>See</u> 147 F. 4th 522.

## CONCLUSION

Based on the reasons explained above, Boatwin's Motion to Dismiss Indictment (Record Document 17) is **DENIED**.

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 29th day of January, 2026.

JUDGE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT COURT